UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY MASSERMAN,

       Plaintiff,                         Case No.

vs.                                       Hon.

DYKEMA GOSSETT, PLLC

       Defendant.
_____/
Pitt McGehee Palmer & Rivers, P.C.
Megan A. Bonanni P52079
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mbonanni@pittlawpc.com
_____/

**COMPLAINT AND JURY DEMAND**

      Plaintiff, Rodney Masserman, by and through his attorneys, Pitt, McGehee, Palmer Rivers P.C., files the following Complaint against Defendant and states as follows:

**JURISDICTIONAL ALLEGATIONS**

1.     Plaintiff is a resident of the State of Michigan.

2.     Defendant Dykema Gossett (hereinafter referred to as "Dykema"), is a Michigan corporation with its principal place of business in Wayne County, Michigan.

3.     The events giving rise to this action, including the alleged discriminatory actions, occurred in Wayne County, Michigan.

4.     Jurisdiction is placed in this Court pursuant to 42 U.S.C. §12111, under the Family and Medical Leave Act (FMLA).

## GENERAL ALLEGATIONS

5.     On April 7, 1991, Plaintiff Rodney Masserman (DOB: 12/19/64) commenced his employment at Dykema as an accounts payable clerk, assigned to work at Defendant's Detroit location where he initially reported to Diane Jouppi and then to Chris Leuth.

6.     Throughout Plaintiff's employment with Defendant he performed his job competently, consistently receiving "Effective" Performance Reviews ratings.

7.     Plaintiff is a person with a disability, as he suffers from sleep apnea, a medical condition for which he is regularly treated through Bi Pap therapy.

8.     In 2002, in order to avoid excessive daytime sleepiness resulting from the apnea and Bi PAP treatment, Masserman's physician requested an altered work schedule, adjusting his start time from 9:00 a.m. to 10 a.m.

9.     After 2002, Masserman continued to work with the 10 a.m. start time, consistently providing Defendant with appropriate medical documentation supporting his ongoing need for this accommodation.

10.    Following the change in start time, anytime Masserman was late for work or had a doctor appointment, management permitted him to make up any lost time.

11.    In the fall of 2012, Karen Gray was assigned to work as Masserman's direct supervisor, replacing Chris Leuth.

12.    In addition to Masserman, Monica Bell and Rene Hladek also worked as accounts payable clerks and reported to Gray.

13.    In late summer, 2013, Rose VanMaldeghem was hired to work as an

accountant to supervise the accounts payable department and reported to Gray.

14. In November 2013, Masserman's partner of 23 years, Ken Ferguson was diagnosed with oral cancer, requiring him to undergo surgery as well as extensive chemotherapy treatment.

15. In November 2013, Masserman informed VanMaldeghem about Ferguson's diagnosis and impending surgery.

16. As a direct result of the stress resulting from his partner's cancer diagnosis and treatment, Masserman's sleep apnea worsened, causing him to experience greater difficulty waking in the mornings causing incontinence and resulting in him being late for work on an intermittent basis.

17. In November 2013, Masserman explained to VanMaldeghem that his recent tardiness was directly related to the impact that this increased stress was having on his sleep apnea. Masserman also informed VanMaldeghem that until Ferguson's condition improved, he would likely continue to experience medical complications to his sleep apnea.

18. Masserman also informed VanMaldeghem that until Ferguson's medical condition stabilized, he would likely continue to experience tardiness at times.

19. Despite his explanation, VanMaldeghem, under Gray's directive, nonetheless "docked" Masserman's pay by 15 minutes on each occasion he was 5 minutes late and thereafter required Masserman to exhaust his PTO time whenever he was late for work.

20. On January 21, 2014, Masserman became emotional during a meeting with VanMelgehem and Gray where his tardiness was discussed. Gray was impatient with Masserman, demanding to know "how long is this going to take", when referring to

Masserman's need for leave due to Ferguson's cancer treatment.

21. On January 21, 2014, during an Accounts Payable Meeting, Gray announced that "if an employee comes in late or needs to leave early, and wishes to make up the time with a shorter lunch or staying after their normal quitting time, it must be agreed to in advance."

22. Because Masserman's tardiness was predominantly due to complications of sleep apnea, it would be impossible to obtain advance approval.

23. On January 23, 2014, Ferguson underwent his first surgery at University of Michigan where he remained hospitalized for a period of 12 days.

24. On January 31, 2014, Ferguson underwent a second surgery.

25. On February 10, 2014, Masserman requested that he be permitted to commence work at 10:30 a.m. Masserman provided an updated Work Accommodation Form from his physician requesting a change in start time from 10:00 a.m. to 10:30 a.m. based on Masserman's sleep apnea.

26. On February 10, 2014, Masserman provided Defendant with the details of his care giving obligations for Ferguson as the timing of his care giver responsibilities were having an impact on his sleep apnea.

27. On February 12, 2014, Defendant refused to extend Masserman's start time any later than 10:00 a.m.

28. On February 13, 2014, Gray authored a "performance memo" on Masserman which was never presented to him.  The memo chronicles Masserman's attendance record, late arrivals and using flex time. The memo fails to make mention of the

4

documented health issues Masserman was experiencing the known impact that Masserman's increased stress level was having on his own medical condition and his reported requests for an accommodation in the form of a later start time.

29. On February 20, 2014 plaintiff was terminated in a reduction of work force while less qualified co-worker Monica Bell remained in the department . The Masserman "performance memo" was relied upon as the basis for his February 20, 2014 termination.

30. Defendant was aware that Masserman was missing work intermittently because of his own serious health condition and that these absences were covered under the FMLA and yet Defendant did not inform Plaintiff that his request for a later start time was appropriate for intermittent leave under the FMLA.

31. Defendant knew that Plaintiff was missing work intermittently because of his own serious health condition and that these absences were covered under the FMLA and that Plaintiff should not be penalized in relation any other term or condition of employment.

**COUNT I**
**(VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT)**

32. Plaintiff incorporates by reference all the allegations contained above as though stated in full herein.

33. At all times relevant hereto, Plaintiff was an employee and Defendant an employer within the meaning of the Family and Medical Leave Act, being 29 U.S.C. §2601, *et seq*.

34. Plaintiff fell within the protection of the Family and Medical Leave Act as a person with a serious health condition. 29 U.S.C. §2612(a)(1)(C) and (D).

35. At all times relevant hereto, Plaintiff suffered from a serious health condition, sleep apnea, a condition which required continuing treatment from a health care provider.

36. Under the Family and Medical Leave Act, Defendant had an obligation to provide Plaintiff with up to 12 weeks of leave for a serious health condition which rendered Plaintiff unable to perform the functions of his position and/or in order to care for a partner who has a serious health condition.

37. In addition, under the Family and Medical Leave Act, Defendant had an obligation to provide Plaintiff with the ability to take his leave time on an intermittent or reduced leave schedule. 29 U.S.C. §2612(b).

38. Notwithstanding Defendant's duties as set forth above, Defendant willfully violated the Family and Medical Leave Act by retaliating against Plaintiff for taking FMLA as set forth in the General Allegations of this Complaint.

39. Defendant was well aware that it was violating the FMLA when it retaliated against Plaintiff for taking FMLA and therefore, Plaintiff is entitled to liquidated damages.

40. As a direct and approximate result of Defendant's violation of the Family and Medical Leave Act, Plaintiff has and will continue to be deprived of wage loss, fringe benefits, status, seniority, and other advantages of employment; Plaintiff has, and in the future, will experience mental anguish, psychiatric disability, humiliation, physical injury, and other embarrassment, resulting from Defendant's violation of the Family and Medical Leave Act.

For the reasons set forth above, Plaintiff demands the following relief:

    a. An Order of this Court awarding Plaintiff compensatory damages;

    b.    An Order of this Court awarding Plaintiff interest, costs, and attorney fees, as provided for under the Act;

    c.    An Order of this Court awarding Plaintiff liquidated damages in accordance with the Family and Medical Leave Act; and

    d.    An Order of this Court providing such other relief as this Court deems just and equitable.

Respectfully submitted,

Pitt McGehee Palmer & Rivers, P.C.

By: */s/ Megan A. Bonanni P52079*
Megan A. Bonanni P52079
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mbonanni@pittlawpc.com

Dated:    July 3, 2014

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY MASSERMAN,

       Plaintiff,                                                Case No.

     vs.                                                    Hon.

DYKEMA GOSSETT, PLLC

       Defendant.
_____/
Pitt McGehee Palmer & Rivers, P.C.
Megan A. Bonanni P52079
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mbonanni@pittlawpc.com
_____/

## **DEMAND FOR JURY TRIAL**

     Plaintiff, Rodney Masserman, by and through his attorneys, Pitt, McGehee, Palmer & Rivers, P.C., herein demands a trial by jury of all issues to the within cause of action.

                                        Pitt McGehee Palmer & Rivers, P.C.

                                        By:*/s/ Megan A. Bonanni P52079*
                                        Megan A. Bonanni P52079
                                        Attorney for Plaintiff
                                        117 W. Fourth Street, Suite 200
                                        Royal Oak, Michigan 48067
                                        (248) 398-9800
                                        mbonanni@pittlawpc.com

Dated:    July 3, 2014